MATTER OF SS. CASTEL FELICE

In Fine Proceedings

NYC-10/52.896

*Decided by Board September 27, 1966*

(1) Liability to fine lies under section 231(b) of the Immigration and Na-
tionality Act for failure of the carrier to present the necessary departure
manifest for passengers (Form I-418) within 30 calendar days from the
date of departure of the vessel, as required by 8 CFR 231.2(a), notwith-
standing the delay in presenting the manifest was allegedly occasioned by
loss in the mails.

(2) There is no provision in section 231 of the Act for mitigation or re-
mission of a fine provided for therein once liability thereto has been
established.

BASIS FOR FINES: Act of 1952—Section 231(b) [8 U.S.O. 1221] and 8 CFR
231.2(a).

This matter originally came before us on appeal from a decision
of the District Director at New York dated January 26, 1966, direct-
ing that administrative penalties totaling $11,310, $10 as to each
passenger aboard the vessel at the time of its foreign departure, be
imposed on the Navcot Corporation, as owner, agent, charterer, or
consignee of the vessel, for failure to submit the required departure
manifests (Forms I-418) as to the passengers in a timely manner.
On April 4, 1966, we withdrew that order of the District Director
and remanded the case to said official for the purpose of giving the
carrier an opportunity to fully support its claim that the necessary
manifests had been filed within the time required. Compliance was
had with that order, and on June 21, 1966, the District Director
again ordered the full fine imposed. He then certified the case to
this Board for final decision.

It appears from the record before us that the following material
facts exist without substantial controversy. On September 8, 1965,
the vessel departed from the port of New York for the port of
Southampton, England. The departure manifests (Forms I-418)

covering that foreign sailing of the ship were filed with the Immigra-
tion and Naturalization Service on October 12, 1965. This event,
then, occurred 34 days after the departure of the vessel for foreign.

The carrier originally contended that the required manifests were
handed by the ship's purser to its agents at Southampton, England,
with instructions that such documents were to be air-mailed to New
York. It submitted an affidavit from the company representative at
Southampton intimating that the manifests were mailed between
September 18, 1965 and September 21, 1965.

After the case was remanded to the District Director at New York,
the carrier alleged that the postal clerk employed by the vessel's
agents in Southampton franked and posted all the ship's mail re-
ceived from the vessel on September 21, 1965 and September 22, 1965.
The affidavit submitted by the postal clerk also included a photostat
of "postbook" listing the mailings for September 20, 21 and 22, 1965.
Among the listings for September 21, 1965 appeared "a/c Castel F.
Ship's Mail L 3–11–8," which the carrier claimed contained the re-
quired manifests. As noted by the District Director, however, this
affidavit by the postal clerk merely gives rise to conjecture that the
manifests were mailed, since the contention that they were was based
only upon the weight and cost of the package mailed. In this con-
nection, the District Director also noted that the postal clerk was
in the habit of registering certain types of mail, but that the mani-
fests were not registered.

The carrier has also stressed that if the manifests were mailed, as
it believes the foregoing establishes, they would have been received
in New York well in advance of the filing deadline, and that since
they were not so received it appears that they must have been lost
in the mail because they were never returned to the carrier. It also
stresses that on the morning of the vessel's departure from New York,
one of its representatives was on board the ship taking care of the
necessary departure procedures, and at that time discussed the
preparation of the necessary immigration forms with the vessel's
purser and emphasized to the latter the importance of having the
passenger manifests completed promptly and accurately and mailed
back to the United States upon the vessel's arrival at its first port
of call which was to be Southampton. In addition, the carrier
places great reliance upon evidence of record showing that when
the manifests were not received in the carrier's New York office
within the period of time reasonably to be expected, a representa-
tive of the carrier made persistent inquiry abroad as to the where-
abouts of the necessary documents, and that it was such persistence

which resulted in new manifests being prepared and eventually submitted to the Service.

Despite the foregoing representations made by the carrier, we feel constrained to affirm the District Director's decision to impose the full penalty herein. Subsection (b) of section 231 of the Immigration and Nationality Act contains a general provision requiring submission of departure manifests before the foreign sailing of a vessel. It does, however, authorize the Attorney General to arrange for the delivery of manifests of outgoing persons at a later date in the cases of vessels such as this making regularly scheduled trips to ports of the United States. Subsection (e) of the statute also authorizes the Attorney General to prescribe the circumstances and conditions under which the manifests required by subsection (b) thereof may be waived.

Pursuant to the foregoing statutory authority, the Attorney General has promulgated 8 CFR 231.2(a) which, insofar as here pertinent, required the departure manifests (Forms I-418) to be presented to the immigration officer at the port of departure within 30 calendar days from the date of departure. This is the only regulation here pertinent which the Attorney General has seen fit to promulgate pursuant to the authority invested in him by section 231 of the statute. It has the force and effect of law and is binding on all parties here concerned (*Di Mieri v. Uhl*, 96 F.2d 92).

Our inquiry ends with the establishment of the fact that the requirements of the regulation promulgated pursuant to statutory authority have not been met. The evidence of record, as hereinbefore summarized, establishes that we are confronted with precisely such a situation here. It does so not only to our satisfaction, but irrefutably and concededly. Thus, the requirements of subsection (d) of the statute requiring the imposition of the fines have been met. There is no authority to waive the manifest requirements of subsection (b) of the statute under circumstances or conditions other than those contained in the regulations promulgated by the Attorney General pursuant to the authority contained in the statute.

We find wanting the claim that the efforts made by the carrier's personnel to insure timely delivery of the manifests in this case, as hereinbefore outlined, constitute the imposition of the penalties herein an unjust result and an undue hardship calling for remission or substantial reduction in the amount of the fines. The circumstances relied on by the carrier in this respect are hazards of the trade which it must overcome. Also, there is no provision in the statute for mitigation or remission of the fines provided for therein once lia-

bility thereto has been established, as it has here. Moreover, as pointed out by the District Director and conceded by the carrier, the latter was well aware of the requirements in cases such as this because of a similar delay in submission of manifests for this same vessel's next prior foreign sailing from the United States on August 19, 1965.

We reject the carrier's argument that the fines should not be imposed here because the four-day period beyond the date for filing the manifests actually involved a weekend and a holiday and that, accordingly, it cannot be seriously urged that the filing of the manifests on October 12, 1965, resulted in any inconvenience or expense to the Service.[1] 8 CFR 1.1(h) provides that:

> The term "day" when computing the period of time for taking any action provided in this chapter, including the taking of an appeal, shall include Sundays and legal holidays, except that when the last day of the period so computed falls on a Sunday or a legal holiday, the period shall run until the end of the next day which is neither a Sunday nor a legal holiday.

The 30th and final day for the filing of the manifests in this case, as required by the regulations, was October 8, 1965, a Friday. Obviously, Saturday intervened between that day and Sunday. That, in turn, was followed by a Monday; October 12th (a Tuesday) was not a federal legal holiday; and the carrier filed the manifests on that day with the Service, which was obviously open for business. Further comment on this aspect of the case is unnecessary.

Finally, under predecessor legislation, as under the present law, there was a general requirement for the submission of departure manifests prior to the foreign sailing of the vessel. Under the former law, however, there was no regulation promulgated as has been done under the present statute. In the absence of such a regulation, there was a long standing administrative policy to permit pilots to deliver departure manifests to the Immigration Service after they had left the ship and returned ashore. Under these circumstances, fines were not imposed for the delivery of the departure manifests later than the law permitted, upon the theory of substantial compliance, in those cases where the circumstances warranted such a finding. Under the present law, however, there is a regulation which spells out what substantial compliance is. Again, there is no authority to waive the manifest requirements of subsection (b) of the statute under circumstances or conditions other than those contained in the regula-

---

[1] Apparently, the carrier is thus endeavoring to argue that the manifests were only submitted one (1) day late.

tion promulgated by the Attorney General pursuant to the authority contained in the statute.

In view of the foregoing, this Board has no alternative but to uphold the District Director's decision to impose the fines in this case. Said official's decision, therefore, is approved.

ORDER: It is ordered that the District Director's decision of June 21, 1966, be and the same is hereby affirmed.